## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: <br> **P3 FOODS, LLC**, <br> Debtor. | Chapter 7 <br><br> Bankruptcy No. 16-32021 <br><br> Honorable Pamela S. Hollis |
| **ZANE L. ZIELINSKI**, not individually but as Chapter 7 trustee for P3 FOODS, LLC <br> Plaintiff, <br><br> v. <br> **TONY PENDOLINO, STEPHANIE LACY-PENDOLINO, AND IAP ALTERNATIVE HEALTH CARE, LLC** <br> Defendants. | No. _____ |

## ADVERSARYCOMPLAINT

Zane L. Zielinski, not individually, but as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of P3 FOODS, LLC (the "Debtor"), by his attorneys, pursuant to 11 U.S.C. §§ 548(a)(l)(A) and (a)(l)(B), and 550(a), complains against Tony Pendolino ("Tony"), Stephanie Lacy-Pendolino ("Stephanie") and IAP ALTERNATIVE HEALTHCARE, LLC (the "Clinic" and collectively with Tony and Stephanie the "Defendants") as follows:

## PARTIES

1.      The Trustee is the duly appointed and qualified Chapter 7 Trustee of the Debtor's bankruptcy estate.

2.      Tony is an individual who is believed to reside at 2269 Keim Road, Naperville, IL 60665.  Tony was the CEO of the Debtor but had no ownership interest in the Debtor and is an insider as defined under 11 U.S.C. §§ 101(31).

3.      Stephanie is an individual who is believe to reside at 2269 Keim Road, Naperville, IL 60665.  Stephanie was the Majority Member of the Debtor owning 90% interest in the Debtor and is an insider as defined under 11 U.S.C. §  101(31)..

4.      The Clinic is a business owned and operated by Tony and Stephanie in 2014, 2015 and 2016 which has an address of 15715 S. ROUTE 59 PLAINFIELD, IL60544.

5.      In the Debtor's Statement of Financial Affairs signed by Tony [Dkt. No. 32], the Debtor identifies Stephanie and Curt Pedro as the Debtor's owners.

## **JURISDICTION**

6.      Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding, which is referred here pursuant to 28 U.S.C. § 157(b) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois

7.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (H), and this Court has constitutional authority to enter final judgments and orders herein. In the event that it is determined that any portion of this proceeding is not a core proceeding or that a that a bankruptcy judge does not have constitutional authority to enter final judgments in this proceeding, the Trustee consents, pursuant to 28 U.S.C. § 157(c), to a bankruptcy judge hearing and finally determining the proceeding and entering appropriate orders and judgments.

8.      This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

## **FACTS**

9.      On October 16, 2016,  (the "Petition Date"), the Debtor, an Illinois Subchapter 'S' corporation, filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (11 U.S.C. §101, *et seq.,* the "Bankruptcy Code") in the United States Bankruptcy Court for

the Northern District of Illinois, Eastern Division (the "Bankruptcy Court").

10.     On May 8, 2018, the Debtor's case was converted to a chapter 7.

11.     On May 9, 2018, the Trustee was appointed the chapter 7 Trustee of the case.

12.     Prior to the Petition Date, the Debtor operated nine Burger King restaurants in Minnesota.

13.     Prior to the Petition Date, the Debtor maintained one operating account for all the nine restaurants located at US Bank with an account number ending in 8665 (the "Operating Account").

14.     In 2016, prior to the Petition Date, Tony and Stephanie created a new bank account located at US Bank with an account number ending in 4832 (the "New Account").

15.     Prior to the Petition Date, Tony and/or Stephanie transferred in excess of $780,000 from the Operating Account to the New Account (the "New Account Transfers").  Attached hereto as **Exhibit A** is a list of all the New Account Transfers.

16.     On information and belief, the New Account Transfers were made for the sole benefit of Tony and Stephanie and provided no benefit to the Debtor.

17.     On information and belief, the New Account Transfers were done in order to conceal funds from the Debtor's creditors.

18.     Based on a review of the Debtor's financial records, for the two years prior to the Petition Date Stephanie and Tony also made a series of transfers in excess of $1.2 million from the Operating Account to themselves, the Clinic, and to the bank accounts other non-debtor entities controlled and owned by Stephanie and/or Tony (the "Operating Account Transfers" and with the New Account Transfers, the "Fraudulent Transfers")).

19.     The Operating Account Transfers include transfers to Tony, Stephanie and the

Clinic.

20.     On information and belief, the Operating Account Transfers were used to pay individual debts of Stephanie and Tony, including the purchasing and re-modeling of residential homes.

21.     On information and belief, the Operating Account Transfers were made to pay personal debts of Tony and Stephanie and not the Debtor's debts.

22.     The Operating Account Transfers are more particularly described on the attached **Exhibit B**.

23.     On information and belief, during the two years prior to the Petition Date, the Defendants received more than $1.9 million on account of the Fraudulent Transfers.

24.     On information and belief, in the two years prior to the Petition Date, the Debtor never issued to Tony any tax documents reflecting the payments he received from the Fraudulent Transfers.

25.     On information and belief, Tony never disclosed on his 2014, 2015 or 2016 taxes any funds he received from the Debtor.

26.     On information and belief, the Debtor never recorded as shareholder distributions any funds received by Stephanie (the "Shareholder Distributions").

27.     On information and belief, Stephanie never reported as income any money received from the Debtor from the apparent Shareholder Distributions.

28.     On information and belief, Tony and/or Stephanie directed the Operating Account Transfers to be paid into various non-debtor accounts in order to conceal the transfers from the Debtor's creditors.

29.     On information and belief, the Debtor never paid any withholding taxes on funds

paid to Tony.

30.    At the time of the Financial Transfers, the Debtor had unpaid financial obligations to the State of Minnesota.

31.    At the time of the Financial Transfers, the Debtor had unpaid financial obligations to PNC Bank

32.    At the time of the Financial Transfers, the Debtor had unpaid financial obligations to Burger King.

33.    In the Debtor's Statement of Financial Affairs, the Debtor does not disclose any distributions to Stephanie.

34.    On information and belief, Tony and Stephanie failed to maintain sufficient books and records for the Debtor in order to conceal the Fraudulent Transfers.

35.    Tony signed the Declaration Under Penalty of Perjury on Behalf of Corporation or Partnership attached to the Debtor's Statement of Financial Affairs, declaring that the information therein is true and correct to the best of his knowledge, information and belief.

36.    To the extent that the Trustee learns that the Debtor made other distributions to the Defendants, the Trustee may seek to amend this complaint to seek the avoidance of those distributions and/or other relief against the Defendants.

## COUNT I
## ACTUAL FRAUDULENT TRANSFER
## 11 U.S.C. § 548(a)(1)(A)
## (Tony, and Stephanie)

37.    All of the allegations set forth in each of the preceding paragraphs are re-stated and re-alleged as if fully set forth in this paragraph.

38.    The Fraudulent Transfers were transfers of an interest of the Debtor in property made within two years preceding the Petition Date.

39.   On information and belief, the Debtor made the Fraudulent Transfers to the Tony and Stephanie with actual intent to hinder, delay or defraud one or more of its creditors, including PNC Bank.

40.   Among other things, the Fraudulent Transfers were made to insiders for no consideration while the Debtor was insolvent and there was outstanding liability to the State of Minnesota and PNC Bank.

41.   Moreover, in light of the nominal unsecured assets disclosed in the Debtor's bankruptcy schedules, it appears that the Fraudulent Transfers effected the transfer of substantially all of the Debtor's assets.

42.   On information and belief, the Fraudulent Transfers was a scheme by Tony and Stephanie to redirect corporate funds for their personal use.

**WHEREFORE,** Zane L. Zielinski, not individually, but as Chapter 7 Trustee of the bankruptcy estate of P3 FOODS, LLC respectfully requests that this Court enter judgment against Tony and Stephanie, pursuant to 11 U.S.C. §§ 548(a)(l)(A) and 550(a), in an amount not less than $1.9 million, and granting the Trustee such other relief as is just.

### COUNT II
### CONSTRUCTIVE FRAUDULENT TRANSFER
### 11 U.S.C. § 548(a)(l)(B)
### (Tony and Stephanie)

43.   All of the allegations set forth in each of the preceding paragraphs are re-stated and re-alleged as if fully set forth in this paragraph.

44.   The Fraudulent Transfers were transfers of an interest of the Debtor in property made within two years preceding the Petition Date.

45.   The Debtor made the Fraudulent Transfers for less than reasonably equivalent value.

46.     On information and belief, at the time of the Fraudulent Transfers, the Debtor: (a) was insolvent or became insolvent as a result of the Fraudulent Transfers; (b) was engaged in or was about to engage in a business or transaction for which the Debtor's remaining property was an unreasonably small capital; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

47.     On information and belief, the Fraudulent Transfers were made to Tony and Stephanie in order to redirect corporate assets and avoid having to pay the Debtor's creditors.

**WHEREFORE,** Zane L. Zielinski, not individually, but as Chapter 7 Trustee of the bankruptcy estate of P3 FOODS, LLC respectfully requests that this Court enter judgment against Tony and Stephanie, pursuant to 11 U.S.C. §§ 548(a)(l)(B) and 550(a), in an amount not less than $1.9 million, and granting the Trustee such other relief as is just.

**COUNT III**
**ACTUAL FRAUDULENT TRANSFER**
**11 U.S.C. § 548(a)(l)(A)**
**(Clinic)**

48.     All of the allegations set forth in each of the preceding paragraphs are re-stated and re-alleged as if fully set forth in this paragraph.

49.     The Fraudulent Transfers received by the Clinic ere transfers of an interest of the Debtor in property made within two years preceding the Petition Date.

50.     On information and belief, the Debtor made the Fraudulent Transfers to the Clinic with actual intent to hinder, delay or defraud one or more of its creditors, including PNC Bank.

51.     Among other things, the Fraudulent Transfers were made the Clinic for no consideration while the Debtor was insolvent and there was outstanding liability to the State of Minnesota and PNC Bank.

52.     Moreover, in light of the nominal unsecured assets disclosed in the Debtor's

bankruptcy schedules, it appears that the Fraudulent Transfers effected the transfer of substantially portion of the Debtor's assets.

**WHEREFORE,** Zane L. Zielinski, not individually, but as Chapter 7 Trustee of the bankruptcy estate of P3 FOODS, LLC respectfully requests that this Court enter judgment against the Clinic, pursuant to 11 U.S.C. §§ 548(a)(l)(A) and 550(a), in an amount not less than the amount received by the Clinic in the two years prior to the Petition Date, and granting the Trustee such other relief as is just.

**COUNT IV**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**11 U.S.C. § 548(a)(l)(B)**
**(CLINIC)**

53.     All of the allegations set forth in each of the preceding paragraphs are re-stated and re-alleged as if fully set forth in this paragraph.

54.     The Fraudulent Transfers received by the Clinic were transfers of an interest of the Debtor in property made within two years preceding the Petition Date.

55.     The Debtor made the Fraudulent Transfers to the Clinic for less than reasonably equivalent value.

56.     On information and belief, at the time of the Fraudulent Transfers to the Clinic, the Debtor: (a) was insolvent or became insolvent as a result of the Fraudulent Transfers; (b) was engaged in or was about to engage in a business or transaction for which the Debtor's remaining property was an unreasonably small capital; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

57.     On information and belief, the Fraudulent Transfers were made to the Clinic in order to redirect corporate assets and to avoid having to pay the Debtor's creditors.

**WHEREFORE,** Zane L. Zielinski, not individually, but as Chapter 7 Trustee of the bankruptcy estate of P3 FOODS, LLC respectfully requests that this Court enter judgment against the Clinic, pursuant to 11 U.S.C. §§ 548(a)(l)(B) and 550(a), in an amount not less than the amount received by the Clinic, and granting the Trustee such other relief as is just.

### COUNT V
### ILLINOIS BUSINESS CORPORATION  ACT
### 805 ILCS  5/90.10(c)(l) and 5/8.65(a)(l)
### (Stephanie and Tony as directors of corporation)

58.     All of the allegations set forth in each of the preceding paragraphs are re-state and re-alleged as if fully set forth in this  paragraph.

59.     At the time of the Fraudulent Transfers, the Stephanie was the majority member of the Debtor and Tony was the CEO.

60.     Due to the financial condition of the Debtor, any distributions made to Stephanie during the two years prior to the Petition Date rendered the Debtor insolvent.

61.     On information and belief, any directors and officers that authorized distributions to be made to the Debtor's owners were not made in good faith.

62.     On information and belief, any distributions made to the Debtor's owners should have used to reduce the Debtor's financial obligations, including but not limited to the debts owed to PNC Bank and the State of Minnesota.

63.     Stephanie and Tony assented to and authorized the Fraudulent Transfers to Stephanie in violations of their duty as the member and manager of the Debtor.

64.     The Fraudulent Transfers received by Stephanie constituted unauthorized distributions, as defined under section 805 ILCS 5/90.10(c).

65.     By authorizing the Fraudulent Transfers to Stephanie, Tony and Stephanie rendered the Debtor insolvent.

66.     Pursuant to 805 ILCS 5/8.65, Tony and Stephanie are liable to the estate for the amount of the Fraudulent Transfers Stephanie received ("Stephanie's Distributions").[1]

WHEREFORE, Zane L. Zielinski, not individually, but as Chapter 7 Trustee of the bankruptcy estate of P3 FOODS, LLC respectfully requests that this Court enter judgment against Tony and Stephanie, pursuant to 805 ILCS §§ 5/90 10(c)(l) and 5/8.65(a)(l), in an amount equal Stephanie's Distributions , and granting the Trustee such other relief as is just.


Dated: May 8, 2019

**Zane L. Zielinski** not individually, but as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of **P3 Foods, Inc**.
By: */s/ Zane L. Zielinski*
One of his attorneys

Zane L. Zielinski (6278776)
**THE LAW OFFICE OF**
**ZANE L. ZIELINSKI, P.C.**
6336 North Cicero Avenue, Suite 201
Chicago, Illinois 60646
d.   773-877-3191
f.   815-846-8516
e.   trustee@zanezielinski.com

---

[1] The Trustee has identified certain transfers received directly by Stephanie. However, Tony and Stephanie made various cash withdrawals and wire transfers to other account which makes it difficult to ascertain the exact funds received by Stephanie.